# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### (KANSAS CITY)

| | | |
|---|---|---|
| RENA M. CHILDS, Personal | ) | |
| Representative of the Estate of Bryan E. | ) | |
| Hill, a/k/a Brionna Hill | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | **Case No.** 4:20-cv-00814-RK |
| | ) | |
| | ) | |
| MATTHEW BRUMMETT, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| …………………………………………) | | |

## PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

i

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................1

    I.    Brummett's and Prichard's face smashing, arm ripping, neck kneeling, beat down of

          Brionna Hill ......................................................................................................1

    II.    Plaintiff's prior state court lawsuit…………………………………………………2

    III.    Plaintiff's claim against the Police Board defendants and Chief Smith in Count II…..2

ARGUMENT ......................................................................................................................2

    I.    The Court should not dismiss the claims for physical injuries to Brionna Hill

          intentionally inflicted by defendants Brummett and Prichard because the Missouri

          survival statutes is generally inhospitable to survival of § 1983 claims......................3

          A.  Application of Missouri survivor law is inconsistent with the deterrence policy of

             §1983................................................................................................................3

                 1.Missouri's survivorship statute is generally inhospitable to survival of

                    §1983 claims ..............................................................................................3

                 2.Missouri's survivorship statute significantly restricts the types of § 1983

                    claims that survive ....................................................................................9

          B.  Physical Injury v. Non-Physical Injury.................................................................10

          C.  Further Discussion of Defendants' Cited Cases ....................................................11

    II.    Even if plaintiff's claims against Defendants and Brummett abate despite a repugnant

          statute, the Count II claims against Defendants Board and Chief Smith do not abate

          because no decision will have been reached on the merits. ........................................14

Case 4:20-cv-00814-RK   Document 39   Filed 07/30/21   Page 2 of 21

## TABLE OF AUTHORITIES

**Cases**

Abed v. Wong¸ No. 05-00281, 2006 WL 1116115 (D. Minn. April 24, 2006).....................12

Abbott v. City of Crocker, Mo.,

    30 F.3d 994 (8th Cir. 1994) .......................................................................................15

Andrews v. Near,

    253 F.3d 1052 (8th Cir. 2001) ..................................................................................11

Andrich v. Kostas,

    470 F. Supp. 3d 1048, 1057-58 (D. Ariz. 2020). .........................................3, 6, 7,8

Banks ex rel. Banks v. Yokemick,

    177 F. Supp. 2d 239, 248 (S.D.N.Y. 2001)..................................................................5

Bentz v. City of Kendallville,

    577 F.3d 776 (7th Cit. 2009)..................................................................................4, 13

Berry v. City of Muskogee,

    900 F.2d 1489, 1491 (10th Cit. 1990)....................................................................2, 11

City of Los Angeles v. Heller,

    475 U.S. 796 (1986)...................................................................................................14

Cotton ex rel. McClure v. City of Eureka, Cal.,

    860 F. Supp. 2d 999, 1011 (N.D. Cal. 2012) ..............................................................3

Crocker v. City of Minneapolis,

    No. 85-00923, 1986 WL 266, at *2 (D. Minn. July 3, 1986)………………………...…13

Erickson v. Camarillo,

    2017 WL 2335659 (D. Ariz. 2017)............................................................................6

Estate of Gilliam v. City of Prattville,

    639 F.3d 1041, 1046-49 (11th Cir. 2011)…………………………………………….11

Est. of Guled by & through Abdi v. City of Minneapolis,

    869 F.3d 680, 685 (8th Cir. 2017)……………………………………………….....13

Fernandez v. Virgillo,

    2014 WL 2930749 (D. Ariz. 2014)......................................................................6, 13

*Heath v. City of Hialeah,*

    560 F. Supp. 840, 844 (S.D. Fla. 1983) ....................................................................3

*Herrera v. Sena,*

    *No. 18-00763, 2019 WL 1922458 (D. New Mexico 2019)*……………………………………12

*Jaco v. Bloechle,*

    739 F.2d 239, 246 (6th Cir. 1984) ..........................................................................9

*Linzie v. City of Columbia, Missouri,*

    651 F.Supp. 740 (W.D. Mo 1986) ..........................................................................5

*Larson v. Wind,*

    542 F. Supp. 25, 27 (N.D. Ill. 1982)...................................................................4, 15

*Martinez v. Salazar*,

No. CV 14-534 KG/WPL, 2016 WL 9724834, at *3 (D.N.M. Nov. 15, 2016)..………………..12

*Oliveros v. Mitchell,*

    449 F.3d 1091 (10th Cir. 2006) ............................................................................12

*Parkerson v. Carrouth,*

    782 F.2d 1449 (8th Cir. 1985). ........................................................................10, 11

*Pietrowski v. Town of Dibble,*

    134 F.3d 1006 (10th Cit. 1998)..............................................................................13

*Prevatt v. City of Gainesville Florida,*

    No. 1:14CV145-MW/GRJ, 2016 WL 154107, (N.D. Fla. Jan. 12, 2016), aff'd sub nom,

    *Prevatt v. City of Gainesville,* 657 F. App'x 905 (11th Cir 2016)............................................14

*Robertson v. Wegmann,*

    436 U.S. 584, 594 (1978)..........................................................4, 5, 6, 7, 8, 9, 10

*White v. Walsh,*

    649 F.2d 560 (8th Cir. 1981) ................................................................................11

*Williams v. City of Oakland,*

    915 F. Supp. 1074 (N.D. Cal. 1996) ........................................................................8

*Wilson v. Spain,*

    209 F.3d 713 (8th Cir. 2000) ................................................................................15

**Statutes**

42 U.S.C. § 1983...............................................1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15

iv

RSMo § 537.020 ......................................................................................................5

RSMo § 537.030 ...............................................................................................9, 13

v

## INTRODUCTION

While it has been said that the wheels of justice turn slowly, for certain Americans with certain claims, it would seem the wheels of justice are at a halt. Yet again, we are confronted with another case of police brutality against an African American; and yet again, the police defendants are attempting to evade responsibility, accountability, and justice through legal maneuvers before being judged by a jury. Brionna Hill[1] was the victim of unconstitutional police brutality. She was later murdered. But murder should not be a complete defense to the type of unconstitutional brutality she endured at the hands of two Kansas City Missouri police officers. The 4th/14th Amendment violations alleged in this lawsuit are much more than a simple common law battery – as was pled in the prior state court Petition. Over one hundred years ago, Missouri decided that injured decedents' estates can bring lawsuits for negligence, but not for battery. RSMo §537.020, 030 (initially enacted in 1909 – before the use of §1983 to redress excessive force became common after *Monroe v. Pape*, 365 U.S. 167 (1961). It is highly unlikely that the Missouri legislature intended this statute block police misconduct of unconstitutional proportions. 4th/14th Amendment police brutality lawsuits brought under §1983 should not be so easily blocked.

Defendants' sole basis for moving for dismissal is abatement. This court's analysis should begin … and end… on whether dismissal of all defendants because Brionna Hill was murdered is consistent with the stated deterrence effect of §1983 claims for excessive force by police officers. Simply stated, it is not. Defendants' Motion to Dismiss should be denied.

## FACTUAL BACKGROUND

**I.  Brummett's and Prichard's face smashing, arm ripping, neck kneeling, beat down of Brionna Hill.**

---

[1] While Bryan Hill was decedent's legal name, he identified as a woman and called herself Brionna. Plaintiff appreciates greatly Defendants' counsel's use of female pronouns and female gender identifiers for decedent as was done in the Complaint. Plaintiff will continue to do the same.

1

Brummett and Prichard[2] brutalized an unarmed, non-aggressive, non-resisting transgender woman. While described in the Amended Complaint (see¶¶ 12-24), Plaintiff refers the Court to the video on the thumb drive filed with the Court Clerk on 01/25/2021 and referenced as Exhibit A to First Amended Complaint (Doc 34). Counsel cannot effectively put into words what happened to Ms. Hill (although an attempt is made in the heading of this section and others) and incorporates video for the adage that a picture is worth a thousand words – a video a million words.

## II. Plaintiff's prior state court lawsuit.

Defendant's comparison of the First Amended Complaint to the state Petition is immaterial. The state Petition alleged only state claims. Here, Plaintiff asserts only federal claims under the United States Constitution.

## ARGUMENT

## I. The Court should not dismiss the claims for physical injuries to Brionna Hill intentionally inflicted by defendants Brummett and Prichard because the Missouri survival statute is generally inhospitable to survival of § 1983 claims.

### A. Application of Missouri survivor law is inconsistent with the deterrence policy of § 1983.

It is helpful to reexamine the history and purpose of §1983 in relation to state law. Section 1983 was passed in 1871 following the Civil War. The 10th Circuit identified historical factors in *Berry v. City of Muskogee, Okl*, 900 F.2d 1489, 1501 -02 (10th Cir. 1990):

> President Grant's message to Congress in 1871 described conditions in the South that "rendere[ed] life and property insecure" and urged legislation that "would effectually secure life, liberty, and property, and the enforcement of law in all parts of the United States." Cong. Globe, 42d Cong., 1st Sess., 236 (1871). The floor debates concerning the proposed act reflected the President's concern. Representative Lowe of Kansas commented as follows:
>
> "While murder is stalking abroad in disguise, while whippings and lynchings and banishment have been visited upon unoffending American citizens, the local

---

[2] Defendants Brummett and Prichard will be referred to here out by their last names only.

2

administrations have been found inadequate or unwilling to apply the proper corrective. Combinations, darker than the night that hides them, conspiracies, wicked as the worst of felons could devise, have gone unwhipped of justice. Immunity is given to crime, and the records of the public tribunals are searched in vain for any evidence of effective redress, if the Constitution may not be enforced, if life and liberty may not be effectively protected, then, indeed, is our Government a failure, and instead of enjoying liberty regulated by law, its subjects may live only by the sufferance of lawless and exasperated conspirators. *Id.* at 374.

*Id.* at 1501-02. "The very purpose of §1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights – to protect the people from unconstitutional action under color of state law." *Heath v. City of Hialeah*, 560 F. Supp. 840, 844 (S.D. Fla. 1983)(citing *Mitchum V. Foster*, 407 U.S. 225 (1971).

Legislative history and case law make abundantly clear that §1983 is meant to ensure that civil rights violations by state actors, acting under the color of state law, are not swept under the rug. In *Cotton ex rel. McClure v. City of Eureka*, the court held:

The Supreme Court has emphasized that § 1983 is a "remedial" statute which is to be "broadly construed" to provide a remedy "against all forms of official violation of federally protected rights." "The policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law."

*Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1011 (N.D. Cal. 2012)(citations omitted).

1. **Missouri's survivorship statute is inhospitable to survival of §1983 claims.**

While the U.S. Supreme Court held in 1978 that §1983 claims may abate on the unrelated death of the decedent under a particular State's abatement law, that Rule would not apply if to do so would have an "independent adverse effect on the policies underlying §1983." *Robertson v. Wegmann*, 436 U.S. 584, 594 (1978). The primary policies underlying §1983 claims are **compensation** and **deterrence**. *Andrich v. Kostas*, 470 F. Supp. 3d 1048, 1057–58 (D. Ariz. 2020)("Disallowing liability for some of the excessive force, simply because the final

3

administration of excessive force was the cause of death, would undermine § 1983's goal of *deterring* law enforcement officers from engaging in any type of excessive force)(emphasis added); *Larson v. Wind,* 542 F. Supp. 25, 27 (N.D. Ill. 1982)("Section 1983's purpose of *deterrence* would be subverted by slavish application of a state survivorship rule denying punitive damages.")(emphasis added).

In *Robertson,* relied upon by Defendants, the Supreme Court held only that a Louisiana survival statute would apply to abate the claimant's § 1983 claims for *malicious prosecution* against a district attorney and others (and related *non-physical* injury claims upon the death of the claimant four years after filing, solely because claimant had no direct family members[3] to continue the action. Justice Marshall stated that the ruling was a "narrow one" and would not apply if the State law is "generally inhospitable to survival of §1983 claims" or if applying the State law would have an "independent adverse effect on the policies underlying §1983 claims" or if the State abatement statute "significantly restricted the types of actions that survive." *Id*. at 594. For instance, if the State survival abated "any tort actions" on the death of the victim, the holding may not apply. *Id*. at 594. Thus, while the analysis of *Robertson* is helpful here – its holding is not. *Robertson* did not involve bodily injury caused by 4th Amendment violative conduct and the state survivorship law it analyzed (*ie.* no direct family members) is not analogous to the Missouri law/

Since § 1983 is silent on the issue of survival, 42 U.S.C. § 1988 directs us to "look to the most closely analogous state law to determine survivability." *Bentz v. City of Kendallville*, 577 F.3d 776, 778 (7th Cir. 2009). However:

> Application of § 1988 demands a three-part inquiry. The Court must first determine whether "suitable" federal law exists. If so, § 1983 must be applied in conformity with such law. Second, where such federal laws are not adapted to the object, or are otherwise deficient, the Court must inquire whether the laws of the relevant

---

[3] Missouri law is clear that claims could be brought by Rena Childs who was duly appointed as the personal representative of Ms. Hill's estate.

4

state provide a rule governing the particular issue. If applicable state law exists, the Court must examine that solution to assess whether it is in some respect inconsistent with the federal Constitution and laws.

In assessing claims of inconsistency, the pertinent inquiry is whether the particular state law is generally inhospitable to § 1983 claims. In this connection, the Supreme Court has instructed that "[i]n resolving questions of inconsistency between state and federal law raised under § 1988, courts must look not only at particular federal statutes and constitutional provisions, but also at 'the policies expressed in [them]'." An inconsistency between a state rule and the purposes of § 1983 may be found if the law "fails to take into account ... policies that are analogous to the goals of the Civil Rights Act."

*Banks ex rel. Banks v. Yokemick*, 177 F. Supp. 2d 239, 248 (S.D.N.Y. 2001)(citations omitted).

Thus, here, the Court must look to the policies and purposes underlying § 1983 in deciding whether Missouri's survival statute is inconsistent with federal law.

As far back as 1986, Judge Bartlett, in this United States District Court for the District of Kansas, considered a similar issue in *Linzie v. City of Columbia, Missouri,* 651 F.Supp. 740 (W.D. Mo 1986). In *Linzie*, Plaintiffs brought a §1983 lawsuit against police officers and the City of Columbia for shooting and killing their daughter. *Id.* at 742. While the parties agreed that the daughter's claims for assault and battery abated on her death[4], the Court had to consider whether personal injury claims (ie. loss of life vs. wrongful death) brought under §1983 abated under R.S.Mo. §537.020. The court first noted that "The fundamental policies underlying §1983 are compensation for persons injured by the deprivation of federal rights and prevention of abuses of power by those acting under color state law. *Id.* (citing *Robertson).* The Court then stated that "[w]here the killing is the alleged unconstitutional act, the ***deterrence*** objective of §1983 would be ***thwarted*** if a civil rights claim under §1983 claiming damages for loss of life could not be asserted because of the application of Missouri law." *Id.*(emphasis added). The court held: "… Missouri law is inconsistent with federal law insofar as it precludes recovery for loss of life and

---

[4] *Id.* at 742.

5

punitive damages under the circumstances alleged in this complaint. Therefore, Missouri law cannot be applied to preclude the survival of a §1983 action seeking actual and punitive damages for [daughter's] loss of life." *Id.* at 743.[5]

More recently, in *Andrich v. Kostas*, decided in 2020, United States District Judge Dominic W. Lanza[6] of the United States District Court, District of Arizona ruled on a similar issue as is before this Court. In *Andrich*, Judge Lanza was tasked with deciding whether plaintiff could "recover pain-and-suffering damages arising from alleged violations of federal law that did not cause [decedent's] death—specifically, the fist hand strikes and taser use by Officers" before a later officer shot and killed him. *Andrich v. Kostas*, 470 F. Supp. 3d 1048, 1056 (D. Ariz. 2020). The defendants argued for the application of *Fernandez v. Virgillo*, 2014 WL 2930749 (D. Ariz. 2014). Plaintiff argued for the application of *Erickson v. Camarillo*, 2017 WL 2335659 (D. Ariz. 2017). Ultimately, the *Andrich* Court held the Arizona survival statute was inconsistent with the federal law.

> Plaintiffs have the better side of this argument. Applying [Arizona's abatement statute] to preclude recovery for the fist strikes and taser use that preceded Mr. Andrich's death would be inconsistent with the goals underlying 42 U.S.C. § 1983. ***In particular, precluding recovery in this circumstance would undermine § 1983's goal of promoting deterrence***.... Thus, it is well settled that one of the key objectives of § 1983 is to deter state officials, via the threat of money damages, from deploying excessive force against—and therefore violating the constitutional rights of—individuals....
>
> It would undermine this objective to allow a police officer who used excessive force to escape liability for his conduct simply because a different officer subsequently engaged in a separate act that caused the victim's death. As the court correctly recognized in *Erickson*, "[a]llowing a mere fortuity for the defendant to produce a significant windfall runs contrary to § 1983's policy goal of deterring unlawful conduct." 2017 WL 2335659 at *7....

---

[5] Among the reasons stated, some include principles from *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984) which was subsequently not followed for reasons unrelated to the analysis relied on.
[6] Formerly an Assistant United States Attorney for the District of Arizona and appointed by President Trump in 2018.

6

Finally, the Court respectfully disagrees with the *Fernandez* courts' suggestion that *Robertson* compels a different conclusion. . . . The facts presented here do not fit within *Robertson*'s explicitly "narrow" holding. *Robertson* concluded that a finding of abatement wouldn't undermine § 1983's goal of deterrence because the case involved novel facts that were unlikely to recur in the future—thus, disallowing liability in that one instance wouldn't undermine the deterrence-related goal of ensuring that official misconduct is punished in a predictable and consistent fashion. … This case, in contrast, involves a common fact pattern—police officers stand accused of engaging in different forms of excessive force during an encounter that ultimately resulted in death. Disallowing liability for some of the excessive force, simply because the final administration of excessive force was the cause of death, would undermine § 1983's goal of deterring law enforcement officers from engaging in any type of excessive force.

*Id*. at 1057-58 (certain citations omitted)(emphasis added).

Here, just as in *Andrich*, it would undermine the policy of § 1983 to allow officers Brummett and Prichard to escape liability simply because of a separate act that caused Ms. Hill's death. Kansas City Missouri police officers are no strangers to excessive force lawsuits, yet none have seemed to have deterred officers, or the Board, from continuing practices involving excessive force—specifically against Kansas City's black population. Dismissing defendants here would only serve to embolden them going forward.

Defendants' arguments regarding the Missouri survival statute not showing hostility toward civil rights or not being inconsistent with federal law are exclusively predicated on the original language in *Robertson*. Interestingly, defendants completely omit any precedential discussion of "deterrence" and solely focus on compensation. Defendants claim that a "public official thinking about using excessive force in Missouri still must be prepared to face a section 1983 action, because they cannot assume their planned victim will die of unrelated causes before suit" and that it is a "'farfetched assumption[]' to think officials can identify which persons will die of unrelated causes or modify their behavior to exploit Missouri's survivorship provisions." (Doc 36, p. 11, ¶3). While defendants model their argument off the language in *Robertson*, they

completely miss the mark on the self-described "narrow" holding. Letting Defendants "off the hook" in this case fails to hold them ***accountable***. It is only through ***accountability*** that deterrence is established.

In *Williams v. City of Oakland*, 915 F. Supp. 1074 (N.D. Cal. 1996), the defendants used the exact same argument which proved to be unsuccessful. Just as in *Andrich*, the court in *Williams* held:

> Plaintiff argues that the holding in *Guyton* should be extended to include survivors whose decedent died from causes unrelated to the conduct complained of, in other words, all survivors in a section 1983 action. Unlike the Louisiana statute in *Robertson,* plaintiff contends, the applicable California statute is fundamentally inconsistent with federal law because it cuts off all damages for pain and suffering even where there are surviving next of kin. Defendants, on the other hand, maintain that because the death in the instant action was unrelated to the official misconduct, providing pain and suffering damages would serve no deterrent effect. In support of their argument defendants point to a passage in *Robertson* which states that for there to be even a marginal influence on behavior, in a case such as this one, "one would have to make the rather ***farfetched assumptions that a state official had both the desire and the ability deliberately to select as victims only those persons who would die before conclusion of the § 1983 suit*** (for reasons entirely unconnected with the official illegality) ...." *Robertson,* 436 U.S. at 592 n. 10, 98 S.Ct. at 1996 n. 10.
>
> This court concludes that plaintiff has the better of the arguments. The Supreme Court did not rest its opinion in *Robertson* solely on the fact that the death was unrelated to the civil rights violation. It also relied on a second reason, saying "*and* Louisiana law provides for the survival of *most* tort actions." *Id.* at 594, 98 S.Ct. at 1997 (emphasis added). By its own admission, the Court's ruling was a "narrow one", limited to situations where the statute itself has no independent adverse effect on the purposes of section 1983. *Id.* The Court gave great weight to the fact that abatement operated only where there were no next of kin, noting that "surely few persons are not survived by one of these close relatives...." *Id.* at 591–92, 98 S.Ct. at 1996. …

*Id.* at 1077 (emphasis added).

Defendants' argument is deficient in many ways, but specifically in regard to deterrence of similar future behavior. Allowing any civil rights violation to go unpunished is a travesty, but

8

establishing a standard for *when* civil rights violations can go unpunished is completely inhospitable to § 1983 claims and completely inconsistent with federal law and the Constitution.

### 2. Missouri's survivorship statute significantly restricts the types of §1983 claims that survive.

In *Robertson*, the Supreme Court further stated that a State's survivorship statute may not apply in situations where the statute "significantly restricted the types of actions that survive." Missouri's survivorship statute states that actions for libel, slander, assault and battery, and false imprisonment shall abate upon a claimant's death. RSMo. § 537.030.   Specifically in terms of § 1983 claims, RSMo. § 537.030 would effectively exclude from survivorship: (1) excessive force (assault and battery), (2) wrongful arrest (false imprisonment), (3) unreasonable search and seizure (false imprisonment), (4) cruel and unusual punishment (assault and battery), and (5) due process (assault and battery, false imprisonment). Basically, the Missouri survivorship statute restricts **NEARLY ALL** types of § 1983 claims from surviving.

Defendants propose, without any case law directly in support, for this Court to immunize all police officers from civil rights claims involving personal injury, no matter how egregious the conduct or the injuries sustained, ***so long as the victim dies prior to the last breath of the last appeal***. Adopting such a draconian Rule would undermine the deterrence of misconduct underpinnings of §1983.  "To afford effect to the expressions and directions of the Supreme Court in *Robertson v. Wegmann*, where, as here, the survival statutes of the forum state are hostile to promoting deterrence, protection and vindication against §1983 civil rights infringements perpetrated under color of law, the federal court must implement the congressional intent of allowing survival." *Jaco v. Bloechle,* 739 F.2d 239,246 (6th Cir. 1984) (Court refuses to apply Ohio statute precluding suit against police officers where victim dies).

9

Because the Missouri abatement statute "significantly restrict[s] the type of actions that survive" as the Supreme Court held in *Robertson v. Wegmann,* it cannot be used to usurp the civil rights protections encapsulated in §1983.

### B. Physical Injury v. Non-Physical Injury

An analysis of Court rulings following *Robertson* on the abatement of §1983 claims reveals a divide between cases involving intentional physical injury (traditional torts of assault, battery and false imprisonment) as opposed to non-physical injury torts (such as libel, slander, and malicious prosecution). This divide is apparent in the cases cited by defendant, none of which hold that a State abatement statute that abated all assault, battery and false arrest/imprisonment claims against police officers would be consistent with the deterrence of intentional misconduct policies underlying §1983 claims.

The primary 8th Circuit case cited by defendants, *Parkerson v. Carrouth*, 782 F.2d 1449 (8th Cir.1985) illustrates the divide between torts that are non-physical (which may be abated on the death of the plaintiff if mandated by State law) and intentional physical injuries. In *Parkerson,* a physician sued state agencies under §1983 for wrongfully damaging his reputation and professional practice after he was acquitted in a criminal trial. The analogous torts included libel, slander and malicious prosecution. There were no claims of physical assault or battery He died before the case came to trial. Arkansas law required abatement of the executrix' claims. The 8th Circuit, after discussing the policy considerations underlying §1983 claims, held that Arkansas abatement law applied to the claims. However, the Court stated that the underlying deterrence policy in §1983 claims is different where the underlying claims are for intentionally inflicting physical injury:

> Accordingly, the deterrence rationale [for §1983 claims] does not necessarily imply a need for an absolute or broad rule of survival. In cases like the present one, in which the alleged civil rights violations ***were not committed for the***

> ***purpose of inflicting physical injury***, we do not believe that the possibility that injured parties will die and their actions abate is likely to give any encouragement to potential wrongdoers. After all, those who libel, slander or maliciously prosecute others, or who participate in any activity that would injure the reputation, psyche, profession, or business of another *rather than cause bodily injury*, have no means of knowing their victim will die during the pendency of the victim's action for redress of those wrongs.

*Parkerson supra* at 1454,55 (emphasis added). The other 8th Circuit case cited by Defendants, *White v. Walsh*, 649 F.2d 560 (8th Cir. 1981), makes a mere passing at the issue in footnote 4. However, the 8th Circuit does recognize that "§1983 was intended to provide special ***deterrence*** for civil rights violations." *Andrews v. Neer,* 253F.3d 1052, 1058 (8th Cir. 2001)(*citing  Berry v. City of Muskogee*, 900 F.2d 1489, 1491 (10th Cir. 1990)(emphasis added).

### C.  Further Discussion of Defendants' Cited Cases

Defendant's claim that federal courts' application of Alabama, New Mexico and Missouri law supports their position. Doc 36 p. 13: "[i]t makes no sense if Missouri's survivorship statute is inconsistent with section 1983 while Alabama, New Mexico, and Minnesota's are not." This bold statement is not correct.

Defendants cite *Estate of Gilliam v. City of Prattville*, 639 F.3d 1041, 1046-49 (11th Cir. 2011)(discussing Alabama law), with a short summary claiming that the Alabama survivorship statute abates *all* tort claims and is nonetheless consistent with section 1983. The statute Defendants are summarizing is as follows:

> In all proceedings not of an equitable nature, all claims upon which an action has been filed and all claims upon which no action has been filed on a contract, express or implied, and ***all personal claims upon which an action has been filed***, except for injuries to the reputation, ***survive in favor of*** and against ***personal representatives***; and all personal claims upon which no action has been filed survive against the personal representative of a deceased tort-feasor.

(Ala. Code § 6-5-462) (emphasis added). An explicit reading of the Alabama statute makes clear that as long as tort claims are filed before the plaintiff death, the action survives. This limited application of abatement is not helpful to our analysis.

Defendants cite *Herrera v. Sena*, No. 18-00763, 2019 WL 1922458 (D. New Mexico 2019) claiming it stands for the proposition that New Mexico's survivorship statute, specifically relating to assault and battery, does not render the statute inhospitable to the survival of § 1983 claims. However, the careful reading of the opinion shows that the decedent was the defendant who committed the §1983 violation, not the victim. Further, Defendants cite to *Oliveros v. Mitchell*, 449 F.3d 1091 (10th Cir. 2006) for support. However, in *Oliveros* the plaintiff never raised abatement as being inconsistent with federal law and therefore waived this issue on appeal. *Id.* at 1095 Defendant's summary of New Mexico law is not accurate. "A plain reading of [New Mexico's survivorship statute] suggests that most pending actions in any court will survive the death of either party, except for those specifically enumerated actions in the statute. Because none of Plaintiff's claims expressly abate by the statute, it follows that Plaintiff's pending claims under Section 1983 . . . survive [decedent's] death." *Martinez v. Salazar*, No. CV 14-534 KG/WPL, 2016 WL 9724834, at *3 (D.N.M. Nov. 15, 2016). As long as the plaintiff files suit, including suits alleging § 1983 claims, before plaintiff's death, almost every case will survive under New Mexico law. *Id.*

Similarly, Defendants' reliance on a trilogy of District of Minnesota and 8th Circuit opinions discussing Minnesota law is also misplaced. In A*bed v. Wong*¸ No. 05-00281, 2006 WL 1116115 (D. Minn. April 24, 2006), the court did not discuss whether the Minnesota survivorship statute was consistent with §1983. *Abed* is not helpful here. *Crocker v. City of Minneapolis* is also not on point whatsoever as plaintiff therein alleged a violation of his due process rights, not

12

excessive force. *See Crocker v. City of Minneapolis*, No. 85-00923, 1986 WL 266, at \*2 (D. Minn. July 3, 1986). And again, in In *Est. of Guled by and through Abdi v. City of Minneapolis*, 869 F.3d 680 (8th Cir. 2017), the only 8th Circuit opinion cited by Defendants on Minnesota law, the only reason plaintiff was unable to bring a §1983 claim is because his wrongful death trustee status was revoked, "[a]s a trustee, Abdi would have standing to pursue a § 1983 claim." *Est. of Guled by & through Abdi v. City of Minneapolis*, 869 F.3d 680, 685 (8th Cir. 2017). The court's discussion regarding whether the statute is inconsistent with the policies underlying §1983 was limited to the issue of trustee status in wrongful death claims. It is not helpful here.

The other cases cited by defendants generally do not support their claim that abatement of intentional physical injury claims is consistent with the deterrence policy underlying §1983 actions. For example, defendants cite *Bentz v. City of Kendallville*, 577 F.3d 776 (7th Cir. 2009), a case where the plaintiff "did not claim that the application of state law [Indiana law abating estate's claims] is inhospitable to the purpose of §1983 actions[7]." *Id*. at 779. Since the Court did not address whether the Indiana abatement law was consistent with the deterrence of misconduct underlying §1983 claims, it offers no guidance to the Court in this matter.

The remainder of defendants' cited cases all involve the rule that to determine whether a particular §1983 claim survives the death of the plaintiff, the Court looks to the 'closest' or 'most analogous' state tort equivalent.[8] Plaintiff does not argue with that Rule or that the closest state tort equivalents to plaintiff's §1983 claims are assault and battery, which abate upon the unrelated (to the tort) death of the plaintiff. R.S.Mo. §537.030.

---

[7] Conversely, Plaintiff here asserts the abatement statute is inhospitable to the purposes of §1983.
[8] *See e.g.* Ray, No. 13-cv-00075, 2014 WL 858736 (N.D. W.V. Mar. 5, 2014); *Fernandez v.* Virgillo, No. 12-cv-02475-JWS, 2014 WL (D. ARiz. Mar. 4, 2014); *Jones v.* George, 533 f. Supp. 1293 (S.D. W. Va. 1982); *Pietrowski v. Town of Dibble, 134 F.3d 1006 (10th(Ci. 1998)* --- all cited in Defendant's Suggestions pp. 7-8.

**II.** **Even if plaintiff's claims against Brummett and Prichard abate despite a repugnant statute, the Count II claims against Defendants Board[9] and Chief Smith do not abate because no decision will have been reached on the merits.**

Defendants would have this Court dismiss the counts against the Board and Chief Smith merely because Missouri statute abates the survival claim against Officers Brummett and Prichard for assault and battery. Yet, at the same time, Defendants acknowledge that no vicarious liability exists under § 1983 and that the Board and Smith are not sued for excessive force. Plaintiff can bring her claims against the Board and Chief Smith whether she brings her claims against the officers or not. The Court must analyze Brummett and Prichard's conduct - not whether Ms. Hill was subsequently murdered resulting in dismissal due to abatement.

In *City of Los Angeles v. Heller,* 475 U.S. 796 (1986) the Supreme Court held that the municipality cannot be liable unless the police officer committed a constitutional violation. *Id.* at 799. *Heller* does not stand for the proposition that the municipality cannot be liable if the involved police officer was dismissed for reasons not involving the merits. Even if the involved police officer was granted qualified immunity based on there being no clearly established law that was violated, the municipality can still be found liable for its policies and customs that were the moving force behind the officer's actions. *Prevatt v. City of Gainesville Florida*, No. 1:14CV145-MW/GRJ, 2016 WL 154107, (N.D. Fla. Jan. 12, 2016), aff'd sub nom, *Prevatt v. City of Gainesville,* 657 F. App'x 905 (11th Cir 2016) (N.D. Fla. 2016). The *Prevatt court stated*:

> The City seems to argue that it is entitled to summary judgment because (1) no constitutional violation occurred; and (2) a finding of qualified immunity equates to a finding that the Constitution has not been violated. The second argument is plainly wrong. A constitutional violation may have occurred even if the law was not clearly established. Under *Monell*, a municipality may be held liable for the constitutional violation.

*Id.* (citations omitted).

---

[9] References to the Kansas City Board of Police Commissioners will be to "the Board."

14

The United States District Court for the Northern District of Illinois more directly addressed the issue in *Larson v. Wind*, 542 F.Supp. 25 (N.D. Ill.1982) where §1983 claims were brought against police officers directly and against villages under *Monell* for shooting him. Plaintiff subsequently died from unrelated causes. Defendants moved for dismissal of the claims under abatement under Illinois law. *Id.* at 26. The court held that "It would clearly disserve the purposes of the Civil Rights Act – causing an 'independent adverse effect on the policies underling §1983' to permit the fact of [claimant's] later death to change the result." *Id.* at 27.

The two cases cited by Defendants miss the mark. *Wilson v. Spain*, 209 F.3d (2000) dismissed the municipality because the officer was dismissed on qualified immunity grounds because the officer's conduct was objectively reasonable – thus not unconstitutional. *Id.* at 717. *Abbott v. City of Crocker*, 30 F.3d 994 (1994) reversed a Judgment as a Matter of Law that had been granted in plaintiff's favor against the municipality– but remanded the case for trial for the jury's determination. *Id.* at 998. Neither opinion holds that unconstitutional conduct that is otherwise not addressed because of a technicality gives the department or its Chief a "pass." Neither opinion is controlling or helpful.


**CONCLUSION**

For the reasons set forth herein, Defendants' Motion to Dismiss should fail.

David R. Smith P.C.

/S/ *David R. Smith*
DAVID R. SMITH, MO # 39088
4310 Madison Ave, Suite 100
Kansas City, Missouri 64111
Telephone: (816)753-9393
Fax: (816) 778-0957
Email: David@dsmith-law.com

15

s/James D. Walker, Jr.
James Dean Walker Law, LLC #29778
1656 Washington St. Suite 130
Kansas City, Mo.64108
(816) 474-8128
Fax (816) 474-7411
Jwalker@jamesdwalkerlaw.com

ATTORNEYS FOR PLAINTIFF

I certify that on this 30th day of July, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system.

*/S/ David R. Smith*
Attorney for Plaintiff

16