IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| RENA M CHILDS, PERSONAL REPRESENTATIVE OF THE ESTATE OF BRYAN E. HILL, A/K/A BRIONNA HILL; | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:20-00814-CV-RK |
| v. | ) ) | |
| MATTHEW BRUMMETT, IN HIS OFFICIAL AND INDVIDUAL CAPACITY; CHARLES PRICHARD, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY;  THE KANSAS CITY BOARD OF POLICE COMMISSIONERS, COMMISSIONER DON WAGNER, PRESIDENT, IN HIS OFFICIAL CAPACITY; COMMISSIONER MARK TOLBERT, VICE PRESIDENT, IN HIS OFFICIAL CAPACITY; COMMISSIONER CATHY DEAN, TREASURER, IN HER OFFICIAL CAPACITY; COMMISSIONER NATHAN GARRETT, MEMBER, IN HIS OFFICIAL CAPACITY; MAYOR QUINTON LUCAS, MEMBER, IN HIS OFFICIAL CAPACITY; AND CHIEF OF POLICE RICHARD SMITH, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER**

Before the Court is Defendants' motion to dismiss. (Doc. 35.) Plaintiff opposes the motion and it is now fully briefed. (Docs. 36, 39, 40.) For the reasons below, the motion is **GRANTED as to Count I** and **DENIED as to Count II**.

**Background**

Plaintiff's claims in this case arise out of allegations of excessive force. Plaintiff Rena M. Childs is the personal representative for the estate of Brionna Hill, who the complaint alleges was injured by two Kansas City police officers during an arrest on or about May 24, 2019. Specifically, Plaintiff alleges, *inter alia*, Officer Brummett and Officer Prichard struck Hill, took her to the

ground, placed their knees and elbows on her neck (restricting her airway), slammed her face and head on hot concrete multiple times, raised and twisted her arms in unnatural positions, ignored her calls for help, and did not render aid or call an ambulance. (Doc. 34 at 4-5.) Hill died after her arrest due to unrelated causes, and Plaintiff filed this action on behalf of Hill's estate.

Brummett and Prichard were charged in state court in connection with the events of May 24, 2019. *See* No. 2016-CR02341 (Circuit Court of Jackson County, Missouri). Similar to the complaint at bar, the indictment states in part that Officers Brummett and Prichard caused Hill injury by "slamming her face against the concrete sidewalk, kneeing her in the face, torso, and ribs, and forcefully bending her arms over her head while her hands were handcuffed and she was laying on her stomach." (Doc. 17-4 at 5.) The criminal case is set for trial December 6, 2021.

Plaintiff's complaint asserts two counts under 42 U.S.C § 1983. Count I asserts Brummett and Prichard violated § 1983 by their unconstitutional use of excessive force against Hill, and Count II asserts the Kansas City Board of Police Commissioners (the "Police Board") and each of its members, in their official capacities, violated § 1983 by their failure to train or supervise, or for their role in adopting policies or customs encouraging the conduct. Count Two also names Kansas City Chief of Police Richard Smith in his individual capacity as a defendant.

## Discussion

Defendants' motion to dismiss is brought under Rules 12(b)(1) and 12(b)(6) and argues Plaintiff lacks standing, legal capacity, or a cause of action because the claims stated in the complaint abated upon Hill's death because Hill's death was unrelated to the § 1983 Excessive Force claim. (Doc. 35, p. 1.)

### I. Legal Standard

Hills's claims are based on federal law pursuant to 42 U.S.C. § 1983. Therefore, the question of whether they survive Hill's death "is a question of federal law." *Carlson v. Green*, 446 U.S. 14, 23 (1980). The traditional rule is claims by an injured party are extinguished upon the death of either party. Statutes, however, can modify the traditional rule. "Statutes allowing the survival of actions were intended to modify the traditional rule that an injured party's claim was extinguished upon the death of either party." *Parkerson v. Carrouth*, 782 F.2d 1449, 1451 (8th Cir. 1986) (citing *Robertson v. Wegmann*, 436 U.S. 584, 589 (1978); *Thompson v. Estate of Petroff*, 319 N.W.2d 400, 402–06 (Minn.1982); W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts § 125A (5th ed. 1984)).

2

To determine whether § 1983 claims survive the injured party's death, we are first governed by 42 U.S.C. § 1988. The Civil Rights Act does not contain a survivorship rule. However, 42 U.S.C. § 1988 recognizes that in certain areas, "federal law is unsuited or insufficient 'to furnish suitable remedies[.]'" *Robertson*, 436 U.S. at 588. As illustrated by the absence of a survivorship rule in the Civil Rights Act, "[f]ederal law simply does not 'cover every issue that may arise in the context of a federal civil rights action.'" *Id.* (quoting *Moor v. County of Alameda*, 411 U.S. 693, 703, 702 (1973)). One specific area not covered by federal law is that relating to the survival of civil rights actions under § 1983 upon the death of either the plaintiff or defendant. "When federal law is thus 'deficient,' § 1988 instructs us to turn to 'the common law, as modified and changed by the constitution and statutes of the [forum] State,' as long as these are 'not inconsistent with the Constitution and laws of the United States.'" *Id.* (quoting § 1988). The common law rule of survivorship of claims has been modified by state survivorship statutes, and we are guided to follow the state survival statute of the forum state. "State statutes governing the survival of state actions . . . were intended to modify the simple, if harsh, 19th-century common-law rule." *Id.* at 589.

In instructing us to turn to state survivorship statutes to resolve this issue, the Supreme Court acknowledges the wide disparity across the country of the states' survivorship laws. "These statutes . . . vary widely with regard to both the types of claims that survive and the parties as to whom survivorship is allowed." *Id.* Even though there are inconsistencies amongst the states, the Court found nothing in § 1983 or the underlying policies of § 1983 to require uniform survivorship rules of § 1983 claims. *Id.* at 593 n.11. ("in the areas [of civil rights enforcement] to which § 1988 is applicable Congress has provided direction, indicating that state law will often provide the content of the federal remedial rule. This statutory reliance on state law obviously means that there will not be nationwide uniformity on these issues.")

*Robertson* involved the interpretation of Louisiana's survivorship statutes. Robertson was the personal representative of Clay Shaw, and was the executor of Shaw's estate. The decedent, Shaw, did not have a surviving spouse, child, parent, or sibling. In *Robertson*, the Plaintiff's § 1983 claim was for bad faith prosecution. *Id.* at 586. The Court found that, for purposes of analyzing survival of the action applying § 1988, "[i]n actions other than those for damage to property [], Louisiana does not allow the deceased's personal representative to be substituted as plaintiff; rather, the action survives only in favor of a spouse, children, parents, or siblings." *Id.*

3

at 591 (citing *Shaw v. Garrison*, 391 F.Supp. 1353, 1361-1363; La. Civ. Code Ann., Art. 2315 (West 1971); *J. Wilton Jones Co. v. Liberty Mut. Ins. Co.*, 248 So.2d 878 (La .App. 1970 and 1971) (en banc)). Because Shaw did not have a living close relative, his claims abated under Louisiana's statute. If Shaw had had a living close relative, the bad faith prosecution claim would have survived for the close relative to pursue.[1] The *Robertson* Court concluded that "[u]nder the circumstances presented here, the fact that Shaw was not survived by one of several close relatives should not itself be sufficient to cause the Louisiana survivorship provisions to be deemed 'inconsistent with the Constitution and laws of the United States'" for purposes of analysis under § 1988. *Id.* at 593. Therefore, the bad faith prosecution claim was held to have abated upon the death of the plaintiff under Louisiana law applied in accordance with § 1988. *Id.* at 593-94.

Here, Plaintiff concedes (1) the applicable rule in this case is that, in determining whether a particular §1983 claim survives the death of the plaintiff, the Court looks to the closest or most analogous state tort equivalent, *see* § 1988(a), (2) the closest state tort equivalents to Plaintiff's § 1983 excessive force claims here, for purposes of determining survival of the action, are assault and battery, and (3) under Missouri statute, claims of assault and battery abate upon the death of the Plaintiff (when the death is unrelated to the assault and battery), § 537.030, RSMo. (Doc. 39, p. 13.)

## II. Count I - Excessive Force Claim

To decide whether a state law causing abatement of a particular action is inconsistent with federal law under § 1988, courts are to consider the particular federal statute and constitutional provisions in question, as well as the policies they express. *Robertson*, 436 U.S. at 590. The Supreme Court accords particular importance to "whether application of state law would be inconsistent with the federal policy underlying the cause of action under consideration." *Id.* (internal quotation marks omitted). The *Robertson* Court applied § 1988(a) to decide whether a claim under § 1983 survived the death of the plaintiff, concluding Louisiana survival law was not inconsistent with the Constitution and laws of the United States. 436 U.S. 584, 585, 594-95.

---

[1] In this case, we need not be concerned with the distinction between "representative" and "close relative." Missouri's survivorship statute does not treat a decedent's personal representative differently than a decedent's close relative as Louisiana's statute does. Missouri simply allows survival only to the "personal representative," and there is no mention of relatives in Missouri's survivorship statute. § 537.020, RSMo. Here, Plaintiff Childs is the personal representative of decedent Brionna Hill.

The *Robertson* Court was careful to express the narrowness of its holding, providing it is "limited to situations in which no claim is made that state law generally is inhospitable to survival of § 1983 actions and in which the particular application of state survivorship law, while it may cause abatement of the action, has no independent adverse effect on the policies underlying § 1983." *Id.* at 594. The Court further noted, "[a] different situation might well be presented . . . if state law did not provide for survival of any tort actions or if it significantly restricted the types of actions that survive." *Id.* (internal quotation marks and citations omitted).

The question here, whether claims brought pursuant to 42 U.S.C. § 1983 survive Plaintiff's death when (1) the claim is excessive force, and (2) Plaintiff's death was unrelated to the excessive force appears to be one of first impression in the Eighth Circuit.

An analogous case is *Parkerson*, in which the Eighth Circuit applied the *Robertson* analysis to claims of malicious prosecution and intentional injury to the plaintiff's medical practice. 782 F.2d at 1450-51. The *Parkerson* case "arose out of an unsuccessful criminal prosecution charging Dr. Parkerson with violating 21 U.S.C. § 841(a)(1) by distributing scheduled drugs not in the usual course of medical practice and for which there was no legitimate medical need." *Id.* at 1450. Dr. Parkerson was acquitted on all counts. *Id.* Dr. Parkerson filed suit against a pharmacist, alleging he maliciously reported false information about his prescribing practices to the state Pharmacy Board and others, leading to a conspiracy that resulted in Dr. Parkerson's indictment, arrest, imprisonment, and coercion into surrendering his medical license and Controlled Substance Registration Certificate. *Id.* He alleged the that the defendant pharmacist conspired with employees of the pharmacy he managed, the state Pharmacy Board, the state Diversion Investigation Unit, and the Federal Drug Enforcement Administration to deprive Dr. Parkerson of his medical license and Controlled Substance Registration Certificate (CS registration) in violation of his civil rights under 42 U.S.C. §§ 1983, 1985, and 1986. *Id.*

The plaintiff, Dr. Parkerson, died before trial, the executrix of the plaintiff's estate was substituted, and upon motion, the District Court dismissed the action on the ground that the action did not survive the plaintiff's death. *Id.* at 1450-51. The Eighth Circuit affirmed, noting, "Arkansas law broadly permits actions to survive when they are based on 'wrongs done to the person or property of another.'" *Id.* at 1451 (quoting Ark. Stat. Ann. § 27–901.4).[2] However, the

---

[2] At the relevant time in *Parkerson*, Arkansas's section 27–901 provided in full:

*Parkerson* Court also observed that state courts had interpreted such statutory language to mean "injuries of a physical character to actual, visible, and tangible property, and not to property rights or interests which in their nature are invisible and intangible" and "not to include such injuries as malicious prosecution or conspiracies to injure another's business where no tangible personal property is affected." *Id.* at 1452 (internal quotation marks omitted). The Eighth Circuit further agreed with the concern set forth in state precedent that allowing a malicious prosecution action to survive the victim's death "would create the need at trial to inquire into the personal character of a dead man and his innocence or guilt of a criminal offense." *Id.* (internal quotation marks omitted). The *Parkerson* court held that Arkansas law barred the survival of the plaintiff's claims of malicious prosecution and intentional injury to the plaintiff's medical practice. *Id.* at 1453.

Further, the Eighth Circuit reasoned that the Arkansas law barring survival of the plaintiff's claims was not inconsistent with the purposes of the federal civil rights laws, in that Arkansas state law (1) did not foster discrimination, (2) provided adequate state remedies for wrongs that also are federal rights violations, (3) assured a remedy for the violation of a federally protected right, (4) did not encourage intentional wrongdoing or official illegality, and (5) did not negatively affect the goal of compensating victims of civil rights violations. *Id.* at 1454 (evaluating the state law in question against the purposes of the federal civil rights laws as articulated by the United States Supreme Court in *Monroe v. Pape*, 365 U.S. 167, 174, 180-83 (1961), *overruled in part on other grounds by Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 673-74, 683 (1978); and *Robertson*, 436 U.S. at 592).

Here, Plaintiff's arguments for survival of the cause of action focus on (1) the restriction of Missouri's survivorship statute on the types of § 1983 claims that survive; (2) the purpose of deterrence of intentional official wrongdoing; and (3) court rulings following *Robertson* distinguishing between physical injury and non-physical injury torts as related to the deterrent purpose of § 1983.

---

For wrongs done to the person or property of another, an action may be maintained against the wrongdoers, and such action may be brought by the person injured, or, after his death, by his executor or administrator against such wrongdoer, or, after his death, against his executor or administrator, in the same manner and with like effect in all respects as actions founded on contracts.

<u>Parkerson</u>, 782 F.2d at 1451.

### A. Missouri's Survivorship Statute

Missouri statute provides that "[c]auses of action for personal injuries, other than those resulting in death, . . . shall not abate by reason of [the injured party's] death" and allows the action to survive "to the personal representative of such injured party." § 537.020(1), RSMo. Missouri state law does "not extend [survival] to actions for slander, libel, assault and battery or false imprisonment." § 537.030, RSMo.

Plaintiff argues the Missouri survivorship statute "restricts **NEARLY ALL** types of § 1983 claims from surviving[,]" so under *Robertson*, it should not apply. (Doc. 18 at 13) (emphasis in original.) To the contrary, however, the Eighth Circuit has expressly concluded:

> The Missouri statutes provide that most causes of action for personal injuries survive the death of either party. Mo. Ann. Stat. § 537.020 (Vernon). Only certain torts are not covered by the general rule of survivorship: slander, libel, assault and battery or false imprisonment. Mo. Ann. Stat. § 537.030 (Vernon). The Missouri Supreme Court has construed these two statutory provisions as follows:
>
>> We think the conclusion is inescapable that when the effect of Section 537.030 is considered, Section 537.020 must be read as though it said in part, "Causes of action for personal injuries, other than those resulting in death, whether such injuries be to the health or to the person of the injured party (except actions for slander, libel, assault and battery or false imprisonment), shall not abate by reason of his death * * *."
>
> *Gray v. Wallace*, 319 S.W.2d 582, 584-585 (Mo. 195[8]).
>
> In *Gray*, the Missouri Supreme Court ruled that a plaintiff's cause of action for malicious prosecution did not abate by reason of the death of the named defendant. The court reasoned that Missouri's general rule of survivorship extended to all actions for injuries to the person "whether to the person's rights or to his body." *Id.* at 583. The court concluded that since the actual tort sued upon was not specifically listed in the statutory section excepting certain torts from the general rule, the cause of action survived the death of the defendant. *Id.* at 585.

*White v. Walsh*, 649 F.2d 560, 562 n.4 (8th Cir. 1981) (emphasis added) (holding plaintiff's cause of action alleging that defendant and two other actors conspired together to deny him a fair trial by purposefully impaneling an all-white jury survived the death of defendant during the litigation); *see also Andrews v. Neer*, 253 F.3d 1052, 1056-58 (8th Cir. 2001) (permitting § 1983 unconstitutional use of force claims under Missouri's wrongful death statute); *Roedder v. Callis*, 375 S.W.3d 824, 827 (Mo. Ct. App. 2012).

Applying the Eighth Circuit *Parkerson* civil rights purposes analysis to Missouri's survivorship statute leads the Court to conclude Missouri law (1) does not foster discrimination,

7

(2) provides adequate state remedies for wrongs that also are federal rights violations, (3) assures a remedy for the violation of a federally protected right, (4) does not encourage intentional wrongdoing or official illegality, and (5) does not negatively affect the goal of compensating victims of civil rights violations. *Id.* at 1454.

### B. Deterrence

Plaintiff's arguments express a particular concern that officers will be not be deterred from committing similar conduct if excessive force claims abate upon death in Missouri. In that regard, the Court finds the following reasoning from *Robertson* is equally applicable here:

> given that most [Missouri] actions survive the plaintiff's death, the fact that a particular action might abate surely would not adversely affect § 1983's role in preventing official illegality, at least in situations in which there is no claim that the illegality caused the plaintiff's death. A state official contemplating illegal activity must always be prepared to face the prospect of a § 1983 action being filed against him. In light of this prospect, even an official aware of the intricacies of [Missouri's] survivorship law would hardly be influenced in his behavior by its provisions.

436 U.S. at 592. Furthermore,

> [i]n order to find even a marginal influence on behavior as a result of [Missouri's] survivorship provisions, one would have to make the rather farfetched assumptions that a state official had both the desire and the ability deliberately to select as victims only those persons who would die before conclusion of the § 1983 suit (for reasons entirely unconnected with the official illegality)[.]

*Id.* at 592 n.10.

Accordingly, having considered the concerns set forth by the Eighth Circuit in *Parkerson*, the Court is unable to conclude that the Missouri survival is inconsistent with the federal civil rights laws under § 1988(a), *Robertson*, or *Monroe*.

### C. Physical Injury

Plaintiff's concern as to the distinction between physical injury and non-physical injury torts as related to the deterrent purpose of § 1983 is reflected in the Eighth Circuit's statement in *Parkerson* that:

> [in cases] in which the alleged civil rights violations were not committed for the purpose of inflicting physical injury, we do not believe that the possibility that injured parties will die and their actions abate is likely to give any encouragement to potential wrongdoers. After all, those who libel, slander, or maliciously prosecute others, or who participate in any activity that would injure the reputation, psyche, profession, or business of another rather than cause bodily injury, have no means of knowing their victim will die during the pendency of the victim's action

8

for redress of those wrongs. Thus, we see in the Arkansas survival law no impairment of the deterrent purpose of the federal civil rights laws.

782 F.2d at 1454-55.

This same reasoning is just as applicable in cases involving claims of physical injury that are unrelated to the claimant's death. This is true because those who participate in activity that causes bodily injury have no means of knowing whether their victim will die before or during the pendency of the victim's action for redress of those wrongs when the victim's claim of physical bodily injury is unrelated to the victim's death. In cases where the civil rights violation involves physical bodily injury that results in death, this Court finds Missouri's wrongful death statute adequately redresses the § 1983 wrongdoing. *See Andrews v. Neer*, 253 F.3d 1052, 1057-58 (8th Cir. 2001).

Moreover, as the *Robertson* Court noted, "A state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose the litigation." 436 U.S. at 593. "If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant." *Id*. "But § 1988 quite clearly instructs us to refer to state statutes; it does not say that state law is to be accepted or rejected based solely on which side is advantaged thereby." *Id*.

Relatedly, this Court has also considered the importance of uniformity of survival of actions to the purpose of deterrence as emphasized by the Supreme Court in *Carlson v. Green*, 446 U.S. 14, 25 (1980). However, as explained in *Robertson*, "the survivorship rules in areas where the courts are free to develop federal common law—without first referring to state law and finding an inconsistency [as in *Carlson* dealing with *Bivens* claims)]—can have no bearing on our decision here." 436 U.S. at 593. "Similarly, whatever the value of nationwide uniformity in areas of civil rights enforcement where Congress has not spoken, in the areas to which § 1988 is applicable[,] Congress has provided direction, indicating that state law will often provide the content of the federal remedial rule." *Id*. "This statutory reliance on state law obviously means that there will not be nationwide uniformity on these issues." *Id*.

Having concluded that Missouri survival law is not inconsistent with the federal civil rights laws, that the closest state tort equivalents to Plaintiff's § 1983 claims here are assault and battery, and that under Missouri statute, claims of assault and battery abate upon the death of the Plaintiff

(when the death is unrelated to the assault and battery), the Court holds Plaintiff's excessive force claim against Brummett and Prichard in Count I abated upon Hill's death. Accordingly, Defendants' motion to dismiss the excessive force claim against Brummett and Prichard is granted as to Count I.

### III. Count II - Claims Against the Board and Smith

In Count II, Plaintiff claims the Board and Smith violated § 1983 by their failure to train, and failure to supervise employees as to proper use of force, and by ratification of unconstitutional use of force through their policies, practices, customs, and patterns of conduct and procedure. Defendants argue because the claims against the Board and Smith "derive from the excessive force allegations in Count I," "assume the same constitutional violation as Count I," and "seek redress for the same injuries," that these claims therefore also abated upon Hill's death. Plaintiff argues "no vicarious liability exists under § 1983 and that the Board and Smith are not sued for excessive force[,]" so "Plaintiff can bring her claims against them whether she brings her claims against the officers or not." (Doc. 39 at 19.)

"A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978)). The focus of the inquiry is thus on the conduct of the body itself or the individual official himself or herself. As to which bodies or individuals may incur such liability, "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* Policymaking officials, such as the Board, however, are responsible only for "their own illegal acts" as giving rise to potential liability under § 1983 and are not vicariously liable for the actions of employees. *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *Monell*, 436 U.S., at 665-683. Likewise, a chief of police "may be held liable in his personal capacity if he directly participated in, or if his failure to train or supervise caused, a constitutional violation." *Wilson v. Spain*, 209 F.3d 713, 717 (8th Cir. 2000).

If a government body or individual official's conduct caused Plaintiff to be subjected to a deprivation of rights, the focus then shifts to whether such claim survives a plaintiff's death. Thus, we must turn again to Missouri's survival statute.

10

Case 4:20-cv-00814-RK    Document 41    Filed 12/01/21    Page 10 of 12

When "[i]nterpreting state statutes, this court applies that state's rules of statutory construction. *Behlmann v. Century Sur. Co.*, 794 F.3d 960, 963 (8th Cir. 2015). In Missouri, "[t]he primary rule of statutory interpretation is to give effect to the General Assembly's intent as reflected in the plain language of the statute at issue." *Ben Hur Steel Worx, LLC. v. Dir. of Revenue*, 452 S.W.3d 624, 626 (Mo. 2015) (en banc). When the words of a statute are clear, "there is nothing to construe beyond applying the plain meaning of the law." *Young v. Boone Elec. Coop.*, 462 S.W.3d 783, 791 (Mo. App. 2015) (quoting *State ex rel. Valentine v. Orr*, 366 S.W.3d 534, 540 (Mo. 2012) (en banc)). As discussed above, Missouri's survival statute provides that "[c]auses of action for personal injuries, other than those resulting in death, . . . shall not abate by reason of [the injured party's] death" and allows the action to survive "to the personal representative of such injured party." § 537.020(1), RSMo. Missouri state law does "not extend [survival] to actions for slander, libel, assault and battery or false imprisonment." § 537.030, RSMo. The parties do not meaningfully address the effect of Missouri's survival statute on the abatement of the claims against the Board and Chief Smith that are not rooted in vicarious liability, but rather rooted in the conduct of the Board and Smith themselves. The Court has not found through its own research any authority for the proposition that these *Monell* type claims against the Board and Smith abate under Missouri's survival statute.[3]

Because § 1983 liability of policymaking officials and supervisors is not derivative in nature, but rather is based entirely on the acts of those particular individuals, and because there is

---

[3] The cases Defendants cite are inapposite. In *City of Los Angeles v. Heller*, the Supreme Court held that the municipality could not be liable where the police officer had been found not to have committed a constitutional violation. 475 U.S. 796, 799 (1986). *Heller* does not stand for the proposition that the municipality cannot be liable if the involved police officer was dismissed for reasons not involving the merits. In *Wilson v. Spain*, the municipality was dismissed because the officer was dismissed on qualified immunity grounds based on the officer's conduct being objectively reasonable – thus not unconstitutional. 209 F.3d 713, 717 (8th Cir. 2000). In *Abbott v. City of Crocker*, the district court granted judgment as a matter of law in the plaintiff's favor on his claims that a law enforcement officer violated his constitutional rights by pursuing him beyond city limits for the purpose of arresting him and by striking him with a flashlight and on his claims that the municipality violated the plaintiff's constitutional rights by its inadequate training of its police officers on the use of force and by allowing them to go outside the city limits to make arrests. 30 F.3d 994, 996-97. The Eighth Circuit remanded the case for trial for the jury's determination, because it found the plaintiff had not been entitled to judgment against the police officer defendant since the question of whether the arrest was objectively reasonable under all the circumstances was a question the jury should have been allowed to determine. *Id.* at 998. Therefore, the Eighth Circuit concluded the district court's grant of judgment against the municipality, absent such jury determination as to the officer's liability on the merits of the constitutional claim against him, was also erroneous. *Id.* None of these cases hold that where unconstitutional conduct is not disposed of on the merits, the decisionmaker or policymaker is somehow released from potential *Monell* liability.

11

no authority for the principle that a *Monell* claim abates upon the death of the Plaintiff, Defendants' arguments to the contrary fail, and their motion to dismiss Count II is denied.

## Conclusion

Accordingly, Defendants' motion to dismiss (Doc. 35) is **GRANTED as to Count I** and **DENIED as to Count II**.

**IT IS SO ORDERED.**

/s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: December 1, 2021